**UNITED STATES of America, Plaintiff,**

v.

**Angela AYALA–MARTINEZ (# 1), Defendant.**

**No. Crim. 97–82(SEC).**

United States District Court, D. Puerto Rico.

Sept. 1, 1998.

Sonia I. Torres, Assistant U.S. Attorney; U.S. Attorney's Office District of P.R.; Criminal Division; San Juan, PR, for plaintiff.

Robert W. Odasz, Carolina, PR, for defendant.

### OPINION AND ORDER

CASELLAS, District Judge.

## I. GENERAL BACKGROUND

This matter comes before the court upon defendant Angela Ayala's (Ayala) motion for individualized voir dire, pursuant to Fed. R.Crim.P. 24(a), and change of venue, under Fed.R.Crim.P. 21 (**Docket No. 1304**). As grounds for her motion, Ayala, who was indicted on charges of narcotics trafficking, contends that she cannot obtain an impartial jury because prejudicial pretrial publicity of her case has tainted the jury pool. Ayala alleges that she has been the subject of sensationalist media coverage, in which she is portrayed as a violent drug trafficker, guilty of the crimes charged against her, 21 U.S.C. §§ 841, 846, and 18 U.S.C. § 1956(a). She claims to suffer actual and presumed prejudice and submits newspaper articles that she claims prejudicially characterize her as a drug kingpin.

Plaintiff, United States of America (the government), filed an opposition to defendant's motion on August 26, 1998 (**Docket No. 1314**). In it, the government counters that press coverage of defendant's case has been factual in nature and not prejudicial. The government further points out that Ayala's claims of actual prejudice are, at this point, prior to voir dire of the jury, premature and speculative. The government does not object, however, to inclusion of limited written questions or verbal questioning by the court of prospective jurors.

For the reasons set forth below, we deny plaintiff's request for a change of venue and for individualized voir dire of each prospective juror. We recognize, however, that the use of precautionary procedures during voir dire would be helpful in screening out juror bias (due to the existence and limited nature of the pretrial publicity in this case) and determine that limited questioning during voir dire concerning pretrial publicity may be employed.

## II. DISCUSSION

### A. Change of Venue Based on Pretrial Publicity

 The right of a criminal defendant to a jury trial includes the guarantee of a fair trial by " 'a panel of impartial, 'indifferent' jurors.' " *United States v. Angiulo*, 897 F.2d 1169, 1181 (1st Cir.) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)), *cert. denied*, 498 U.S. 845, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). A court may grant a change of venue upon determination that, in the district, the defendant cannot receive a fair and impartial trial because of great prejudice against the defendant. *Id.* See Fed.R.Crim.P. 21(a).[1] That determination, however, lies within the sound discretion of the trial court. The same will only be reversed upon an abuse of discretion. *Id.*

In order to determine whether sufficient prejudice exists so as to warrant a change of venue, we must answer a two-part inquiry. *Id.* That is, we must determine whether, based on the facts before us, we can presume jury prejudice. If we cannot find a presumption of prejudice, we must determine whether the jury was actually prejudiced against the defendant. *Id.*

### 1. Presumed Prejudice

Ayala claims that her case represents one of the admittedly rare situations in which prejudice should be presumed. She claims that inflammatory newspaper articles, far overstepping the boundaries of factual accounts, have cast her and her associates as the worst group of criminals to have lived in southern Puerto Rico and imply that Ayala is conclusively guilty of all charges brought against her. She likens the coverage of her to that regarding the United States military invasion of Panama in an effort to arrest General Manuel Noriega (**Docket No. 1304**). The government argues that newspaper accounts of Ayala's arrest are strictly factual

and do not reach the level of sensational press coverage requiring a change of venue.

We may find a presumption of prejudice upon a showing of two factors. First, it may be shown that " 'prejudicial inflammatory publicity about [a] case so saturated the community from which he [the defendant's] jury was drawn as to render it virtually impossible to obtain an impartial jury.' " *Angiulo*, 897 F.2d at 1181 (quoting *United States v. McNeill*, 728 F.2d 5, 9 (1st Cir.1984) (internal citations omitted)). Under this test, the publicity must be "extensive and sensational in nature." *Id.* Factual rather than inflammatory or sensational media coverage will not sustain a presumption of prejudice. *Id.*

The second, and more indirect, factor examines the degree to which a trial court must search to find impartial jurors. *Agiulo*, 897 F.2d at 1181. That is, "[w]here a high percentage of the venire admits to a disqualifying prejudice, a court may properly question the remaining juror's avowals of impartiality, and choose to presume prejudice." *Id.* (citing *Murphy v. Florida*, 421 U.S. 794, at 802–03, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)); *Cf. United States v. Moreno Morales*, 815 F.2d 725, 735 (1st Cir.1987), *cert. denied*, 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 397 (1987) (finding that the twenty-five percent of the venire, who admitted to believing the defendants' guilty, did not constitute a sufficient amount to presume prejudice where the actual jurors proclaimed impartiality).

 Here, defendant submits newspaper articles, dated May 1997, December 1997, and January 1998. Contrary to defendant's contentions, these newspaper accounts are strictly factual. For instance, the articles discuss defendant's prior record of convictions and reputation. An article from the *San Juan Star*, dated May 6, 1997, contains a summary of the indictment, such as the allegations of Ayala's involvement in a criminal enterprise and explains the chain of command within the alleged trafficking organiza-

---

1. Fed.R.Crim.P. 21(a) provides:
 The court upon motion of the defendant shall transfer the proceeding as to that defendant to another district whether or not such district is specified in the defendant's motion if the court is satisfied that there exists in the district

whether the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district.

tion, as described in the indictment. Also reported is the number of residences, vehicles, and cash seized from the defendants. The *San Juan Star* May 6, 1997 article alludes to well-known co-defendants, including a Major League Baseball player, an attorney, and a police officer. Another *San Juan Star* article, dated May 7, 1997, reports on the killing, after the arrest of defendant, of a member of defendant's gang.

Thus, the articles contain factual accounts of Ayala's arrest and, in a straight-forward manner, inform the public of the basis for her arrest, precluding a finding that the media coverage is presumptively prejudicial. Indeed, the fact that the arrests of the defendants were publicized, giving the public and any potential jurors knowledge of the case does not, by itself, establish a presumption of prejudicial publicity or a biased jury. *See United States v. Kouri Perez*, 985 F.Supp. 25, 27 (D.P.R.1997), *mandamus denied*, 134 F.3d 361, 1998 WL 42184 (1st Cir.1998).

We note that, although these accounts refer to defendant Ayala as head of a "drug empire" and a "notorious drug baroness," such references do not rise to the required standard of inflammatory or prejudicial characterizations. As the government notes in *Angiulo*, the court declined to find that the volumes of newspaper reports and television transcripts, which included references to the defendant as a "crime figure," "mafia boss," and "leader of the ... underworld," sufficiently inflammatory or emotionally charged so as to require a change of venue. *Angiulo*, 897 F.2d at 1181. While similarly unflattering, the descriptions of Ayala also are not sufficiently inciteful or inflammatory so as to justify a presumption of prejudice. Moreover, the fact that a *San Juan Star* article, dated May 6, 1997, also emphasized, in a strictly factual manner, the arrests of a former professional baseball player and a police officer is not evidence of inflammable press coverage, but a legitimate and reasonable emphasis on a matter inherently of public interest.

Furthermore, defendant has produced only five articles, three dated May 1997, at the time of the arrest, one dated December 1997, and another dated January 1998. This de-

gree of coverage can hardly be viewed as widespread, continuous, and pervasive. *See Angiulo*, 897 F.2d at 1181 (stating that publicity must be extensive to uphold a presumption of prejudice and declining to find a presumption of prejudice despite the defendant's submission of "volumes" of press coverage); *Moreno Morales*, 815 F.2d at 737 (stating that a change of venue may be ordered where the community has been "saturated" with publicity against the defendant). Accordingly, defendant has failed to meet her burden of establishing a presumption of prejudice, based on a finding of extensive and sensational media coverage.

We further note that, since the jury selection process in this case has not yet commenced, we need not determine whether defendant can establish a presumption of prejudice by attributing impartiality of part of the jury to the whole venire. *Angiulo*, 897 F.2d at 1181–82.

## 2. Actual Prejudice

■■■ The next question before us is whether trial jurors were actually prejudiced. It is not required, to show the absence of actual prejudice, that "every juror's mind be a blank slate with respect to the defendant." *Id.* at 1182. Rather, we must determine whether jurors possessed such " 'fixed opinions that they could not judge impartially the guilt of the defendant.' " *Id.* (quoting *Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)). A juror need only have had the ability to set aside his preconceived notion and reach a verdict based on the trial evidence. Thus, mere exposure to defendant's names or arrest is insufficient to establish actual prejudice of a juror. *Id.*

■■■ Here, as noted by the government, since the jury selection process has not yet commenced, as stated, plaintiff cannot establish this prong. Thus, as the government correctly argues, any claim by defendant as to actual prejudice is premature and illusory.

We further note that defendant's claims of a prejudiced jury pool are undermined by the relatively small scale of publicity and notoriety of her case, when contrasted with the availability of an impartial jury in cases in-

volving a much greater degree of media coverage and explosive circumstances. In *Moreno Morales*, 815 F.2d at 730–31, the media coverage of the infamous Cerro Maravilla shooting was continuous, and deemed by the trial judge "the media event of the years 1983–1984." That case involved the shooting, by police officers, of two members of the Puerto Rico independence movement, who had gone to Cerro Maravilla to blow up or sabotage a television tower on the mountain. *Id.* at 729. The police later attempted to cover-up the murder of the independentistas. Thus, this incident involved police corruption intertwined with a charged political atmosphere. *Id.* Throughout most of 1983, the Senate of Puerto Rico conducted hearings on the shootings, and the media covered every detail revealed at the hearings. *Id.* at 729. In fact, the judge, in continuing the trial until after the 1984 gubernatorial election, found the media coverage of the incident so intense and pervasive, that the defendants effectively stood trial before, and were found guilty by, the entire community. *Id.* at 731.

Despite this condemnation by public opinion, the defendants received a trial by an impartial jury; none of the seated jurors admitted at the voir dire to any belief as to the defendants' guilt and only twenty-five percent of those not seated expressed beliefs, of varying degrees, that the defendants were guilty. *Id.* at 735. Here, the media coverage of Ayala and the present case in no way matches the extensive and pervasive press coverage and the circumstances present in the *Moreno Morales* case. Consequently, defendant's claims of an inability to find an impartial jury are weak at best.

█ Nevertheless, the court may design, with the attorneys' assistance, the proper mechanism to scrutinize possible bias from any prospective juror. Defendant requests, pursuant to Fed.R.Crim.P. 24(a),[2] that because this case presents a significant possibility of prejudice, defense counsel should be able to voir dire each prospective juror individually. The government opposes the procedure requested by defendant, citing intense questioning concerning pretrial publicity and notoriety as damaging to the impartiality of prospective jurors. It agrees to the submission of limited written questions or the use of questions by the court on the issue of pretrial publicity.

In light of the nature of the publicity and circumstances surrounding plaintiff's case, as discussed above, as the trial date approaches, the court, with the parties assistance, will work out a procedural mechanism that will effectively dispel any concern the defendant may have regarding jurors' bias, if any.

Accordingly, for the reasons set forth above, we find that defendant has failed to establish a presumption of prejudice and cannot establish actual prejudice, so as to warrant a change of venue. Therefore, defendant Angela Ayala's motion for change of venue is **DENIED**.

**SO ORDERED.**

---

2. Under Fed.R.Crim.P. 24(a),

The court may permit the defendant of the defendant's attorney and the attorney for the government to conduct the examination of the prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or the defendant's attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.